**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| Machinery Solutions, Inc., ) | Civil Action No. 3:15-cv-03447-JMC |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| Doosan Corporation, Doosan Group, ) | **ORDER AND OPINION** |
| Doosan Infracore, Doosan Infracore ) | |
| America Corporation, Ellison Technologies, ) | |
| Inc., Mitsui & Co., LTD, Mitsui & Co. ) | |
| (USA), Inc. and John Doe, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Machinery Solutions, Inc. ("MSI"), filed this action seeking damages from Defendants Doosan Corporation, Doosan Group, Doosan Infracore, Doosan Infracore America Corporation ("Doosan"), Mitsui & Co., LTD, Mitsui & Co. (USA), Inc., and John Doe for terminating their dealership contract with MSI and for contracting with another distributor, Ellison Technologies, Inc. ("Ellison").[1] (ECF No. 37.)

This matter is before the court by way of Ellison's Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 8 and 12(b)(6). (ECF No. 42.) For the reasons set forth below, the court **GRANTS IN PART** and **DENIES IN PART** Ellison's Motion to Dismiss.

**I.     RELEVANT BACKGROUND TO PENDING MOTION**

Doosan manufacturers machine tools. (ECF No. 25-1 at 3 ¶¶ 8–9.) MSI alleges that it has had an ongoing contractual relationship with Doosan since 1997. (ECF No. 37 at 3 ¶ 17.) On February 10, 2009, Doosan sent MSI a "Letter of Understanding" or "Distributor Agreement" to outline the sale of new machine tool products in North Carolina, South Carolina,

---

[1] MSI stipulated to the dismissal of Doosan Corporation, Doosan Group, Doosan Infracore, Mitsui & Co., LTD, Mitsui & Co. (USA), Inc., and John Doe on November 18, 2015. (ECF No. 46.)

and Georgia. (ECF No. 1-1 at 22–25.) Pursuant to the terms of the Distributor Agreement, either party could terminate the agreement, at any time for any reason whatsoever, by giving the other party prior written notice of at least 30 days. (ECF No. 1-1 at 24 ¶ XIII.)

On August 21, 2015, MSI received a letter (the "August Letter") from Doosan's President in which he communicated the intent of Doosan to terminate the Distributor Agreement with MSI. (Id. at 28-30.) The August Letter stated that MSI would have 30 days to finalize all existing projects, and after that time MSI must cease pursuing any future business or representing that MSI is an authorized Doosan dealer. (Id. at 28.) The letter also included an attachment entitled "Conduct of Business During Transition Period." (Id. at 29–30.) In the attachment, Doosan identified Ellison as the new Doosan dealer in North Carolina, South Carolina, and Georgia.[2] (Id. at 30 ¶ 6.)

On August 25, 2015, MSI filed a Complaint and a Motion for Temporary Restraining Order, Temporary (or Preliminary) Injunction, and Rule to Show Cause in the Court of Common Pleas for Lexington County, South Carolina. (ECF Nos. 1-1, 4.) Doosan removed MSI's action from state court to this court on August 27, 2015, pursuant to 28 U.S.C. § 1332 claiming that "this civil action is 'between citizens of different States' and the amount 'in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'"[3] (ECF No. 1 at 2 ¶ 3 (quoting 28 U.S.C. § 1332(a)(1)).) On August 8, 2015, the court entered an Order that denied MSI's Motion for Temporary Restraining Order and Rule to Show Cause and set up a briefing schedule and hearing date on MSI's Motion for Preliminary Injunction. (ECF No. 8.) On September 18,

---

[2] Effective September 1, 2015, through Ellison's dealership in Charlotte, North Carolina, Ellison became a dealer for Doosan machine tools servicing customers in North Carolina, South Carolina, and Georgia. (ECF No. 26–1 at 4 ¶¶ 9–10.)

[3] In the Notice of Removal, Doosan stated that (1) MSI had served the Complaint on Ellison, which consented to the removal "[u]pon information and belief" and (2) the remaining Defendants had not been served and therefore their consent was not required under 28 U.S.C. 1446(b)(2)(A). (ECF No. 1 at 3 ¶ 5.)

2015, the court denied MSI's Motion for Preliminary Injunction. (ECF No. 34.)

MSI then filed an Amended Complaint on October 8, 2015, alleging claims against Doosan and Ellison jointly for violation of the South Carolina Unfair Trade Practices Act ("SCUTPA") (count 4), S.C. Code Ann. § 39-5-10 to -560 (2014), civil conspiracy (count 5) and interference with existing and prospective contracts (count 6); and against Doosan singularly for violation of the Fair Practices of Farm, Construction, Industrial, and Outdoor Power Equipment Manufacturers, Distributors, Wholesalers, and Dealers Act ("FPA") (count 1), S.C. Code Ann. § 39-6-10 to -180 (2014), breach of contract (count 2), and breach of contract accompanied by fraudulent act (count 3). (ECF No. 37.) On October 29, 2015, Ellison filed a Motion to Dismiss claims against it in the Amended Complaint for violation of SCUTPA, civil conspiracy, and interference with existing and prospective contracts. (ECF No. 42.) MSI filed opposition to the Motion to Dismiss on November 16, 2015, to which Ellison filed a Reply in support of dismissal on November 30, 2015. (ECF Nos. 43, 48.)

On April 11, 2016, the court held a hearing on the pending Motion to Dismiss. (ECF No. 54.)

## II.     JURISDICTION

The court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.00. MSI is a corporation organized under the laws of South Carolina with its principal place of business in Lexington County, South Carolina. (ECF No. 37 at 1 ¶ 1.) Doosan is incorporated in the State of New York and Ellison is incorporated in the State of Delaware. (Id. at 2 ¶¶ 5 & 7; see also ECF No. 1 at 2–3.) Moreover, the court is satisfied that the amount in controversy exceeds $75,000.00 in accordance with MSI's representation. (ECF No. 37 at 3 ¶

3

11.)

## III.     LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## IV.     ANALYSIS

A.     Dismissal of MSI's Cause of Action for Violating SCUTPA

*1. The Parties' Arguments*

Ellison argues that the Amended Complaint's allegations do not support a SCUTPA

4

claim because MSI failed to plead "which actions by Ellison allegedly violated SCUTPA, nor what provisions of SCUTPA were violated." (ECF No. 42 at 5.) Specifically, Ellison asserts that the SCUTPA claim fails because such claim cannot be based on an alleged breach of contract and the only relevant allegation made by MSI is that "Ellison and Doosan 'worked together' to breach Doosan's contract with Plaintiff." (Id. at 5 (citing, e.g., ECF No. 37 at 13 ¶ 72; Omni Outdoor Adver. v. Columbia Outdoor Adver., 974 F.2d 502, 507 (4th Cir. 1992)).) Additionally, Ellison asserts that MSI fails to sufficiently establish public harm based on its allegations that Doosan and Ellison terminated the distribution agreements of other distributors. (Id. at 6.) In this regard, Ellison argues that "[a]side from the fact that contract breaches alone do not violate SCUTPA, actions technically capable of repetition, but which affect only the contracting parties, do not satisfy the public harm element of a SCUTPA claim." (Id. (citing, e.g., Kraft Real Estate Inv., LLC v. HomeAway.com, Inc., No. 4:08-cv-3788, 2012 WL 220271, at *17 (D.S.C. Jan. 24, 2012)).)

In response to Ellison's contentions, MSI argues that its SCUTPA claim should not be dismissed because it has alleged an unlawful trade practice based on (1) Ellison's refusal to sell to MSI any Doosan parts effectively eliminating MSI's ability to service its customer base and (2) Ellison's role in Doosan violating the FPA. (ECF No. 43 at 4.) In support of these arguments, MSI expounds that the refusal to sell it any Doosan parts under any circumstance is an unfair method of competition since it "effectively eliminate[s] MSI's ability to call on its customer base . . . ." (Id.) MSI further expounds that a violation of the FPA is a violation of SCUTPA under South Carolina law. (Id. (citing S.C. Code Ann. § 39-6-40 (2015)[4]).)

MSI next argues that it can demonstrate the public harm required by a SCUTPA claim.

---

[4] "Unfair methods of competition and unfair or deceptive acts or practices are unlawful as provided in Section 39-6-50, . . . ." S.C. Code Ann. § 39-6-40 (2015).

5

First, MSI asserts that Ellison's actions have an adverse impact on public interest based on the fact that it and other dealers all over the country have been prevented from being able to service their respective customers. (Id. at 6.) Second, MSI asserts that Ellison violated section 39-6-160 of the FPA[5] "by becoming the new dealer within South Carolina, North Carolina and Georgia and such violation shows the necessary element of public harm to survive Ellison's motion to dismiss." (Id. at 6–7.)

*2. The Court's Review*

Ellison moves for dismissal of MSI's claim alleging a violation of SCUTPA. SCUTPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." S.C. Code Ann. § 39-5-20 (2015). SCUTPA also provides that "any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice . . . may bring an action . . . to recover actual damages." S.C. Code Ann. § 39-5-140(a) (2015).

To establish a SCUTPA claim, a plaintiff must demonstrate that "(1) the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." Network Computing Servs. Corp. v. Cisco Syss., Inc., 152 F. App'x 317, 320 (4th Cir. 2005) (quoting Havird Oil Co. v. Marathon Oil Co., 149 F.3d 283, 291 (4th Cir. 1998)). "Conduct that affects only the parties to the transaction provides no basis for a SCUTPA claim." Morgan v. HSBC Bank USA, N.A., 6:13-cv-03593-JMC, 2015 WL 3888412, at *4 (D.S.C. June

---

[5] "A provision of a contract or a practice pursuant to a contract in violation of this chapter is against public policy and unenforceable." S.C. Code Ann. § 39-6-160 (2015).

24, 2015) (citation omitted). "An impact on public interest may be shown if the acts or practices have the potential for repetition." Id. (citation and quotation omitted). The potential for repetition may be shown in two ways: "(1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts." Id. (citation and quotation omitted).

However, a "plaintiff must use specific facts to demonstrate that members of the public were or were likely to be affected." Id. at *5 (citation omitted). Absent specific facts, a plaintiff is merely offering a speculative claim about adverse public impact. Jefferies v. Phillips, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994). A claim under SCUTPA is inadequate where it "fails to allege any specific procedures or business practices that create the potential for repetition." Ethox Chem., LLC v. Coca-Cola Co., No. 12-1682, 2013 WL 41001, at *3 (D.S.C. Jan. 3, 2013).

Upon review, the court agrees with Ellison that the Amended Complaint does not sufficiently allege an adverse impact on public interest. Although the Amended Complaint alleges that Ellison's actions are ongoing against other members of Doosan's North American Dealer Family and are not just a one-time transaction against MSI (ECF No. 37 at 14 ¶ 77), it does not present specific facts demonstrating that Ellison's conduct is the result of standard procedures or business practices that have an adverse impact on public interest. Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n, C/A No. 3:15-cv-01300-JMC, 2015 WL 7568613, at *9 (D.S.C. Nov. 24, 2015) ("The fact that an alleged misconduct occurred is not sufficient to establish that the misconduct amounts to a procedure or business practice."). Moreover, when viewed in their entirety, the allegations of the Amended Complaint only show that the outcome of this case will affect these parties and not the broader public. Accordingly,

the court concludes that MSI's SCUTPA claim should be dismissed.

B.      Dismissal of MSI's Cause of Action for Civil Conspiracy

   *1. The Parties' Arguments*

Ellison argues that it is entitled to dismissal of MSI's civil conspiracy claim because there is not a single allegation in the Amended Complaint "that the primary purpose of the Ellison-Doosan relationship is to injure . . . [MSI]."  (ECF No. 42 at 2, 7.)  Moreover, Ellison argues that the only allegation relevant to the claim (ECF No. 37 at 14 ¶ 80[6]) establishes that Ellison and Doosan were carrying out a business plan and business plans do not provide "sufficient motive for a civil conspiracy claim under South Carolina law."  (Id. (citing, e.g., BCD LLC v. BMW Mfg. Co. LLC, 360 F. App'x 428, 437 (4th Cir. 2010)).)

Ellison next argues that the civil conspiracy claim fails as a matter of law because the damages alleged are not distinct from the damages alleged as to the other claims.  (ECF No. 42 at 9.)  Ellison contends that the damages for civil conspiracy are not unique to the claim and the very same damages are alleged for all of MSI's claims.  As a result, Ellison states that it is entitled to dismissal of the civil conspiracy claim because such claim cannot be "based on the same alleged conduct that supports other causes of action."  (Id. (citing, e.g., Hackworth v. Greywood at Hammett, LLC, 682 S.E.2d 871, 875 (S.C. Ct. App. 2009)).)

---

[6] In paragraph 80 of the Amended Complaint, MSI alleged as follows:

> Defendants Doosan and Defendants Defendant Ellison Technologies, Defendant Mitsui & CO., LTD, Defendant Mitsui & CO. (U.S.A.), Inc., and Defendant John Doe engaged in a civil conspiracy with each other to [sic] relating to the replacement of Defendants Doosan's North American exclusive marketing and distribution rights.  All Defendants have been conspiring to unlawfully breach Plaintiff's contract with Defendants Doosan and to damage Plaintiff without justification in order to allow the proposed replacement plan to move forward.  All Defendants have refused to communicate with Plaintiff to discuss the replacement plan and the effect it has on Plaintiff.

(ECF No. 37 at 14 ¶ 80.)

In defense of its claim for civil conspiracy, MSI asserts that the Amended Complaint expressly discusses how Ellison's actions with Doosan "were done for the purpose of damaging many dealers," including MSI. (ECF No. 43 at 8.) As to Ellison's contention that its actions were for legitimate business purposes, MSI argues that it has "the right to engage in discovery" thereby precluding the court from determining at this time whether "the actions of the Defendants were truly done in advance of a legitimate business purpose." (Id. at 10.)

MSI next asserts that the Amended Complaint identifies actions undertaken in furtherance of the civil conspiracy, such as Ellison establishing a website and contacting MSI's employees and customers about the potential transition prior to MSI learning about the termination of its distributorship. (Id. at 10 (citing ECF No. 37 at 15 ¶¶ 85–86).) Finally, MSI asserts that it has pleaded specific damages unique to the conspiracy claim including "damage to its reputation, loss of goodwill with suppliers, customers, and employees, and interference with . . . [MSI's] ability to protect its investments." (Id. at 11 (citing ECF No. 37 at 16 ¶ 93).)

*2. The Court's Review*

Under South Carolina law, a "[c]ivil conspiracy consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damage." Vaught v. Waites, 387 S.E.2d 91, 95 (S.C. Ct. App. 1989). As long as sufficient facts are alleged to make out a prima facie civil conspiracy claim, the plaintiff does not have to explain all of the details of the conspiracy in his complaint. Charles v. Tex. Co., 5 S.E.2d 464, 472 (S.C. 1939). However, a civil conspiracy claim must be supported by facts independent of the other causes of action in the complaint; a plaintiff may not simply incorporate allegations that support other causes of action to sustain a cause of action for civil conspiracy. Cricket Cove Ventures, LLC v. Gilland, 701 S.E.2d 39, 46 (S.C. 2010) (citing Todd v. S.C. Farm

Bureau Mut. Ins. Co., 278 S.E.2d 607, 611 (S.C. 1981)).  The plaintiff must also plead damages suffered as a result of the conspiracy that go beyond damages alleged in other causes of action. Id. at 39 (citing Vaught, 387 S.E.2d at 95).

Upon review, the court concludes that dismissing MSI's civil conspiracy cause of action would be premature at this stage.  MSI's allegations do allow for an inference that Ellison and Doosan were acting for the purpose of injuring MSI.  (ECF No. 37 at 14 ¶ 80 ("All Defendants have been conspiring to unlawfully breach Plaintiff's contract with Defendants Doosan and to damage Plaintiff without justification in order to allow the proposed replacement plan to move forward.").)  Moreover, MSI has alleged as follows both facts to support the civil conspiracy claim that are independent of the other causes of action and special damages that are beyond the damages alleged in the other claims:

> In July 2015, representatives of Defendant Ellison Technologies purchased the domain name ellisondoosan.com.
>
> Prior to August 21, 2015, Plaintiff's employees received calls from its customers indicating that Ellison Technologies' employees had told them that they will be handling the sale and servicing of Defendants Doosan's products moving forward.
>
> Further, Defendants actions have caused Plaintiff to incur special damages including, but not limited to, damage to reputation, loss of goodwill with suppliers, customers, and employees, and interference with the Plaintiff's ability to protect its investments.

(Id. at 15 ¶¶ 85–86 & 16 ¶ 93.)  These allegations, if accepted as true, are sufficient support for a civil conspiracy claim that is plausible on its face.

For these reasons, the court denies Ellison's Motion to Dismiss MSI's claim for civil conspiracy.

C.    Dismissal of MSI's Cause of Action for Tortious Interference with Existing Contracts

*1. The Parties' Arguments*

Ellison argues that the tortious interference with existing contracts claim should be

10

dismissed because MSI failed to allege (1) the existence of "any valid contracts", (2) Ellison's knowledge of any valid contracts, or (3) how Ellison procured the breach of these contracts. (ECF No. 42 at 12.)  As a result of the foregoing, Ellison asserts that MSI has "failed to literally allege any breach [of a contract], much less whether and how Ellison procured such a breach." (Id.)  Ellison further argues that it cannot be liable for a tortious interference claim when its actions were justified since they were taken as part of its business function.  (Id. at 13 (citing Gailliard v. Fleet Mortg. Corp., 880 F. Supp. 1085, 1089–90 (D.S.C. 1995) ("Interference with a contract is justified when it is motivated by legitimate business purposes.")).)

In opposing dismissal of its interference with existing contracts claim, MSI argues that it specified 120 contractual examples in the Amended Complaint.  (ECF No. 43 at 14 (citing ECF No. 37 at 6 ¶ 32).)  MSI argues that it is disingenuous for Ellison to claim that it did not know about these contracts since Ellison "is now allegedly responsible for any and all warranty work for MSI's customers since the date of termination."  (Id. at 15.)  MSI further argues that it sufficiently pleaded that "Ellison intentionally procured a breach of the 120 contracts discussed above by taking proactive steps to ensure [there] was no option for MSI's customers but to terminate their contracts with MSI."  (Id. at 16.)  Finally, MSI argues that the assessment of Ellison's legitimate business purpose is a factual question and not an appropriate consideration at this stage of the litigation.  (Id. at 17.)

    2.  *The Court's Review*

"[A]n action for tortious interference protects the property rights of the parties to a contract against unlawful interference by third parties."  Threlkeld v. Christoph, 312 S.E.2d 14, 15 (S.C. Ct. App. 1984).  The elements for a claim of tortious interference with a contract are: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) intentional

11

procurement of the contract's breach; (4) absence of justification; and (5) damages resulting therefrom. DeBerry v. McCain, 274 S.E.2d 293, 296 (S.C. 1981). "[T]he alleged act of interference must influence, induce, or coerce one of the parties to the contract to abandon the relationship or breach the contract." Bocook Outdoor Media, Inc. v. Summey Outdoor Adver., Inc., 363 S.E.2d 390, 394 (S.C. Ct. App. 1987) (citation omitted).

To plead tortious interference with existing contracts, MSI alleges that it "sold to its customers about 120 Doosan machines which are still covered by a Doosan Warranty as well as commitments made by Plaintiff to its customers." (ECF No. 37 at 6 ¶ 32.) MSI further alleges that Doosan was aware that it "had longstanding business and economic relationships with its many customers in South Carolina, North Carolina and Georgia." (Id. at 17 ¶¶ 96–97.) After considering the aforementioned allegations, the court concludes that the tortious interference with existing contracts claim fails against Ellison because the Amended Complaint does not sufficiently allege the existence of valid contracts between MSI and its customers or Ellison's knowledge of such contracts to survive the Motion to Dismiss. The court reaches this conclusion because the Amended Complaint's allegations do not create (1) an inference of valid contracts between MSI and its customers either by generally referencing Doosan's manufacturer's warranty or by using the word choice of "commitments" and "business and economic relationships" instead of "contract" or "agreement"; or (2) an inference of Ellison's knowledge of any such contracts since MSI only specifically alleges Doosan's knowledge of the contracts. Therefore, MSI fails to sufficiently allege a claim for tortious interference with existing contracts against Ellison.

D.      Dismissal of MSI's Cause of Action for Interference with Prospective Contracts

   *1. The Parties' Arguments*

Ellison argues that it is entitled to dismissal of MSI's claim for tortious interference with

prospective contracts because the Amended Complaint fails to identify (1) any prospective contracts and (2) any specific contracts that Ellison interfered with.  (ECF No. 42 at 14.) Additionally, Ellison argues that MSI failed to specify how Ellison had an improper purpose or utilized improper methods.  (Id.)  In this regard, Ellison asserts that its "intent to carry out its core business function, however, is not improper."  (Id. (citing BCD, 360 F. App'x 435–36).)

MSI opposes dismissal of its tortious interference with prospective contracts claim on the basis that it has provided information regarding "customers that were involved in active discussions for new machine tools and . . . active orders . . . sufficient to show the existence of prospective contractual relations."  (ECF No. 43 at 18.)  As to the improper purpose or method element, MSI asserts that the element can be "proven if the defendants' actions involve unethical conduct[,]" but in this case requires "a factual determination that the [c]ourt cannot make for purposes of determining this motion."  (Id. at 18–19.)

3.  *The Court's Review*

To recover on a cause of action for intentional interference with prospective contractual relations, a plaintiff must show: (1) the defendant intentionally interfered with plaintiff's potential contractual relations; (2) for an improper purpose or by improper methods; (3) causing injury to the plaintiff.  Crandall Corp. v. Navistar Int'l Transp. Corp., 395 S.E.2d 179, 180 (S.C. 1990).  "If a defendant acts for more than one purpose, his improper purpose must predominate in order to create liability."  Id.  "As an alternative to establishing an improper purpose, the plaintiff may prove the defendant's method of interference was improper under the circumstances."  Id.

Upon review of the Amended Complaint, the court is able to discern only 1 paragraph (ECF No. 37 at 7 ¶ 35) with allegations relevant to MSI's claim for intentional interference with

13

prospective contractual relations. Moreover, in that 1 paragraph, MSI only alleges that it disclosed "all . . . active negotiations" to Doosan and MSI "does not . . . know how Defendants Doosan and Ellison have used or intend to use that confidential information." (Id.) The court finds that this allegation neither identifies a specific contract that MSI expected to enter nor demonstrates an improper purpose or method as it relates to prospective business relationships. Santoro v. Schulthess, 681 S.E.2d 897, 904–05 (S.C. Ct. App. 2009) ("[T]he plaintiff must demonstrate that he had a truly prospective or potential contract with a third party; that the agreement was a close certainty; and that the contract was not speculative . . . . [T]here can be no finding of intentional interference with prospective contractual relations if there is no evidence to suggest any purpose or motive by the defendant other than the proper pursuit of [his or her] own contractual rights with a third party.") (citations omitted). Therefore, MSI has not sufficiently alleged a claim for intentional interference with prospective contractual relations. Accordingly, Ellison is entitled to dismissal of the aforementioned claim.

## V.     CONCLUSION

Upon careful consideration of the allegations in the Amended Complaint (ECF No. 37) and the arguments of the parties, the court hereby **GRANTS IN PART** Ellison's Motion to Dismiss (ECF No. 42) and **DISMISSES** MSI's causes of action for violation of SCUTPA, tortious interference with existing contracts, and tortious interference with prospective contracts. Ellison's Motion to Dismiss is **DENIED** with respect to MSI's cause of action for civil conspiracy.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

May 12, 2016
Columbia, South Carolina